DEV DAS (SBN : 320712)
THE DAS FIRM, APC.
644 S. Figureoa Street
Los Angeles, CA 90017
Telephone : (248) 943-4828
Email : dev@thedasfirm.com

Daniel Marcus, Esq. (5664164) Pro Hac Vice Pending
82 Nassau St, #62278
New York, NY 12207
Tel.  551-427-5069
dan@hlgesq.com

Attorneys for Plaintiff, ALEX YAM

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX YAM<br><br>          Plaintiffs,<br><br>     vs.<br><br>HOLLYWOOD UNLOCKED, INC.; and DOES 1-10<br>,<br>          Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. **LIBEL PER SE**<br>2. **COPYRIGHT INFRINGEMENT**<br>3. **FALSE LIGHT- INVASION OF PRIVACY**<br>4. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**<br>5. **PUBLIC DISCLOSURE OF PRIVATE FACTS**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff, Alex Yam, through his attorneys Daniel Marcus, Esq., and The Das Firm, APC, as and for his complaint herein, respectfully alleges as follows:

- 1 -

COMPLAINT

**PRELIMINARY STATEMENT**

1. The Plaintiff, Alex Yam ("Yam") is a well-respected figure in professional basketball, who by virtue of his ability to speak both Mandarin and Cantonese is known for his ability to help players and agents secure employment with Chinese professional basketball clubs.

2. The Defendant, Hollywood Unlocked, Inc. ("Hollywood Unlocked") is an entertainment gossip publication that publishes salacious stories about celebrities as a means to generate views, clicks, and advertising revenue.

3. Yam assisted the former agents of disgraced former professional basketball player Noah Vonleh ("Vonleh") secure playing contracts for Vonleh in China collectively worth over $3,000,000 (three million USD).

4. Vonleh elected not to pay his former agents their standard fee and subsequently lost to his former agents in fee arbitration before the arbitral tribunal for international professional basketball disputes.

5. Shortly thereafter, with no one else to blame or sue, Vonleh initiated a smear campaign against Yam where he accused Yam of fraud, forgery, and stealing from Vonleh and other players who Yam previously assisted in securing employment as professional basketball players in China. None of these allegations have any merit and are bold-faced lies designed to defame Yam.

6. Upon information and belief, Hollywood Unlocked accepted money from Vonleh to publish a post on Hollywood Unlocked's Instagram account and their nearly 4,000,000 followers accusing Yam of forgery and fraud while also having the audacity to use Yam's copyrighted photograph of himself to promote the "story" and simultaneously doxxing Yam's home address to the general public.

7. Despite his success as a placement agent for professional basketball players, Alex Yam is a name that no one in the general public recognizes and Noah Vonleh is a former professional basketball player whose career was not even long enough for most basketball fans to form a memory capable of being forgotten.

8. As a result of the dissemination of these reckless and flagrant falsehoods, Yam's reputation was seriously and irreparably harmed, Yam received death threats that caused significant emotional and physical distress/anguish, and his copyright with respect to the photograph of himself was infringed.

9. The Plaintiff seeks the remedies/relief requested herein stemming from Hollywood Unlocked's defamatory post, publication of his home address, and infringement of Yam's copyrighted photograph of himself.

## JURSIDICTION AND VENUE

10. This Court has subject matter jurisdiction with respect to the federal copyright infringement claims alleged herein pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331.

11. This Court has supplemental jurisdiction with respect to the balance of the claims contained herein pursuant to 28 U.S.C. § 1367 as such claims arise from the same case or controversy as the federal copyright infringement claims.

12. Venue is proper in the Central District of California under 28 U.S.C. §§ 1391(b)(2) or (3) (2) it is the Judicial District in which a substantial part of the events or omissions giving rise to the claim occurred and is the location of the principal place of business of the Defendant, Hollywood Unlocked.

## THE PARTIES

13. Plaintiff, Alex Yam ("Yam") is a professional basketball placement agent and is a resident of the State of California.

14. Upon information and belief, Defendant Hollywood Unlocked, Inc. ("Hollywood Unlocked") is a Delaware corporation engaged in the business of running a celebrity gossip media platform and various social media accounts with its principal place of business located at 8581 Santa Monica Blvd, PMB 569, West Hollywood, CA 90069-4120.

## THE FACTS

15. The Plaintiff, Alex Yam, has spent the better part of the past two decades forging a career in professional basketball as a placement agent, working with various player agents to help secure employment for their clients as professional basketball players in China. Over the course of his career, Yam developed a reputation as a trusted steward and confidante of both agents and players alike.

16. As a Chinese American who speaks fluent Mandarin and Cantonese, Yam had uniquely positioned himself as one of the few American figures in the business of professional basketball who can successfully place American professional basketball players in the Chinese professional league, which is the second most lucrative market in the world for professional basketball players outside of the National Basketball Association ("NBA").

17. Yam's primary source of income is from certified professional basketball agents and agencies who engage Yam to help secure employment for their players with professional basketball teams in China.

18. In spite of his success and track record within the world of professional basketball, Yam has maintained his privacy and does not engage in public life nor is he a "household name" for basketball fans – in other words, if you're not in the business of basketball, you have never heard nor would you recognize the name Alex Yam – and even if you are in the business of basketball, there is a reasonable likelihood (if not probability) that you have never heard of Alex Yam.

19. In 2021, Yam was engaged by another agency, Pensack Sports ("Pensack"), to help secure employment as a professional basketball player in China for one of their clients at the time, Noah Vonleh ("Vonleh").

20. Yam successfully secured a one-year contract worth $1,974,728 for Vonleh to become a member of the Shanghai Sharks in the Chinese Basketball Association ("CBA") (the Chinese equivalent of the NBA) for the 2021-2022 season.

21. Nearly two years later, Pensack once again enlisted Yam to help secure a subsequent playing contract for Vonleh in China, which Yam successfully did in

1  facilitating another playing contract with the Shanghai Sharks for the 2023-24 season
2  worth $1,400,000 (the "23-24 Contract").

3      22.    Around the time the 23-24 Contract was signed, Vonleh fired Pensack.
4  Prompting Pensack to initiate arbitration before the Basketball Arbitral Tribunal ("BAT"),
5  which is the adjudicative body for most international professional basketball disputes, to
6  recover unpaid agent fees from Vonleh (the "Pensack Case").

7      23.    On June 14, 2024, the arbitrator in the Pensack Case issued an arbitration
8  award in favor of Pensack and ordered Vonleh to pay over $200,000 in unpaid agent fees,
9  interest, and costs to Pensack.

10      24.    Having lost in arbitration and lacking any further recourse against Pensack,
11  Vonleh focused his grievance, anger, and resentment towards Yam, launching what can
12  best be described as a character assassination campaign against Yam in which Vonleh
13  alleged that Yam defrauded and stole money from Vonleh in connection with the various
14  contracts Yam helped secure for Vonleh with the Shanghai Sharks.

15      25.    Commencing in June of 2024 and continuing to this day, Vonleh has used
16  his social media following and platform (which included roughly 69,000 followers on
17  Instagram alone) – as well as the internet more broadly to spread defamatory falsehoods
18  about Yam, alleging (among other things) that Yam is "corrupt," has "stolen money from
19  players," "forged documents," etc.

20      26.    At one point, Vonleh was leveraging paid digital campaigns on various
21  social media platforms such as "X" (i.e. spending his own money to garner more eyeballs)
22  to spread these falsehoods regarding Yam. Vonleh's consistent attacks against Yam
23  resulted in Vonleh's ban from the X platform as well as a months'-long suspension from
24  Instagram.

25      27.    Seemingly dissatisfied with the number of views and clicks that his lies
26  about Yam were receiving, upon information and belief, on or about March 13, 2025,
27  Vonleh contracted and/or exchanged consideration with the Defendant, Hollywood
28  Unlocked for the publication of a "story" about Yam (the "Post") that was published on

1  Hollywood Unlocked's website, https://hollywoodunlocked.com and their Instagram
2  account, which boasts an audience of nearly 4,000,000 (four million) followers.

3      28.    The Post contained nearly identical syntax, structure, language, and content
4  as the steady stream of defamatory posts published and promoted by Vonleh. Moreover,
5  the Post specifically alleged that "Without his consent, Alex Yam/Shanghai Sharks forged
6  initials on to a representation agreement that was created with the Shanghai Sharks,
7  allowing Yam and associates to illegally take agency fees from his contract."

8      29.    Within minutes, a reputation that took Yam nearly two decades to build was
9  shattered, as the Post containing injurious and defamatory falsehoods went "viral" and
10 was picked up (rebroadcast/re-published) by news aggregators such as MSN and became
11 the top result on search engines (including Google) when individuals entered search
12 queries relating to Yam. In the ensuing days following the publication of the Post, Yam
13 received messages from individuals and organizations from across the professional
14 basketball world calling into question Yam's character and conduct as a result of the
15 allegations disseminated by Hollywood Unlocked.

16     30.    To make matters worse for Yam, the Post not only spread blatant falsehoods
17 regarding Yam's conduct and character but it also disseminated/revealed Yam's home
18 address and contact information.

19     31.    In the immediate wake of the publication of the Post, Yam also began to
20 receive anonymous death threats, which because his home address was now visible for
21 millions of people to see, caused Yam a great amount of physical and emotional distress
22 as well as fear for his life and the lives of his family.

23     32.    Within 24 hours of the publication of the Post, Yam received a text message
24 from an unknown phone number which contained a screenshot of the Post bearing Yam's
25 face and an additional message that read as follows: "You ugly bitch. You not dead yet
26 you loser."

27     33.    In the ensuing days and months Yam experienced insomnia, paranoia, and
28 severe emotional and physical distress as a result of the broad dissemination of the

falsehoods contained in the Post, which clearly inflamed a certain subset of the general public, so much so that several individuals went to the trouble of obtaining Yam's phone number to make clear and direct threats on his life.

34. The mental and emotional toll of knowing that at any moment someone might show up to his house to cause him or his family harm prompted Yam to begin seeing a psychiatrist.

35. To add further insult to injury, Hollywood Unlocked also had the audacity to use Yam's copyrighted photograph of himself as one of the main pictures in the Post without obtaining a license or his consent.

36. It is evident that Hollywood Unlocked did not conduct anything resembling basic research into the claims alleged in the Post nor did they attempt to reach out to Yam for comment or to confirm any aspect of the story. Had they simply read the arbitration award issued by the BAT which Vonleh proudly displays in his Instagram biography, they would have learned that there was not an ounce of truth to Vonleh's allegations, the arbitrator in the Pensack Case even went as far to note: "*Contrary to the Player's (Vonleh) assertion, the Agency's cooperation with Mr. Alex Yam greatly benefited the Player, as Mr. Yam was very helpful in securing several lucrative contracts in China for the Player.*"

37. Hollywood Unlocked also appears to sell posts and stories on its various platforms through third party personal relations firms for the low price of $1,450 per post.

38. As a result of the defamatory post published by Hollywood Unlocked that upon information and belief was paid for by Noah Vonleh, Yam has suffered significant reputational harm in a business and role that is predicated upon trust, which in turn has led to a substantial drop off in Yam's business as a professional basketball agent.

**FIRST CLAIM FOR RELIEF**

(Defamation- Libel Per Se)

39. Yam repeats and realleges the allegations set forth in Paragraphs 1-35 of this Complaint as if fully set forth herein.

40. Upon information and belief, the Defendant accepted consideration from Noah Vonleh and/or his representatives or affiliates to create both an Instagram post and a "blog" post on their website: https://www.hollywoodunlocked/com that falsely alleged that Yam forged Noah Vonleh's initials on a contract between Vonleh and the Shanghai Sharks in order to illegally take agent fees from Vonleh. These posts were disseminated to nearly four million people (the "Defamatory Posts".

41. The Defamatory Posts read in relevant part as follows: *"Without his consent, Alex Yam/Shanghai Sharks forged initials on to a representation agreement that was created with the Shanghai Sharks, allowing Yam and associates to illegally take agency fees from his contract."*

42. Yam never forged Vonleh's initials on any contract whatsoever, including and especially any alleged agreements between Vonleh and the Shanghai Sharks. Yam was engaged by Pensack Sports to help secure employment for Vonleh with a Chinese professional basketball team, which Yam successfully did not once but twice to the tune of over $3,000,000. Outside of one meeting in passing at the NBA's annual Summer League in Las Vegas, Yam does not know nor did he ever have a direct relationship with Vonleh.

43. The Defendant, Hollywood Unlocked failed to exercise reasonable care or conduct even basic research as to the veracity of the claims it alleged in the Defamatory Posts and never once reached out to Yam for confirmation of the allegations or an opportunity to comment. The Defendant's abject failure to observe the simplest of journalistic standards or norms is even more egregious when considering that even a light skimming of the arbitration award from the Pensack Case would have disproven the allegations made by Vonleh and subsequently published for profit on the Defendant's website and various social media accounts.

44. Yam has spent the better part of 20 years developing a reputation and a business predicated upon honesty, trust, and integrity which is why he is known as one of the "go to" agents for players and other agents to secure employment as a professional

basketball player in China. However, with only a few keystrokes and (upon information and belief) in exchange for a relatively modest sum of money, the Defendant shattered the reputation Yam spent countless hours and resources building and maintaining in a matter of minutes.

## SECOND CLAIM FOR RELIEF

(Copyright Infringement)

45. Yam repeats and realleges the allegations set forth in Paragraphs 1-35 of this Complaint as if fully set forth herein.

46. The Defendant incorporated and published a picture of Yam that Yam himself took for his agent profile for the FIBA database (the "Yam Image") as one of the featured images for the Defamatory Posts that were shared with millions of people without obtaining a license or permission from Yam.

47. The Yam Image is an original creative work in which Yam owns a valid copyright properly registered with the United States Copyright Office and bearing the registration number: VAu 1-554-073.

48. Without permission or authorization from Yam and in willful violation of Yam's rights under 17 U.S.C. §106, Defendant improperly and illegally copied, stored, reproduced, distributed, adapted, and/or publicly displayed works copyrighted by Yam thereby violating one of Yam's exclusive rights in his copyright.

49. Defendant's reproduction and display of the Yam Image in the Defamatory Posts disseminated to millions of people constitutes willful copyright infringement. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc*., 499 U.S. 340, 361 (1991).

50. As a result of Defendant's violation of Title 17 of the U.S. Code, Yam is entitled to any an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504 in an amount to be proven or, in the alternative, at Yam's election, an award for statutory damages against each Defendant in an amount up to $150,000.00 for each infringement pursuant to 17 U.S.C. § 504(c).

51. As a result of the Defendants' violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 from Defendant.

### THIRD CLAIM FOR RELIEF

(False Light Invasion of Privacy)

52. Yam repeats and realleges the allegations set forth in Paragraphs 1-35 of this Complaint as if fully set forth herein.

53. As set forth above, the Defendant disseminated posts falsely alleging that Yam defrauded Vonleh by forging his signature on a document with the Shanghai Sharks in order to obtain an illegal agent fee to an audience of roughly 4,000,000 people that was amplified to many more via news aggregators and search engines.

54. Any reasonable person would find the allegations made in the Defamatory Posts to be offensive as they not only raise questions about the subject's (Yam) personal and professional integrity (which has serious ramifications in and of itself) but the allegations of fraud and forgery also suggest criminal conduct, as most states (including and especially California) have criminal fraud statutes.

55. In addition to their offensive and injurious nature, the false allegations made in the Defamatory Posts also resulted in Yam receiving several death threats.

56. Due to their apparent disinterest in and failure to examine the veracity of the false claims made in the Defamatory Posts, the Defendant acted with reckless disregard as to the truth of the false claims made in the Defamatory Posts.

### FOURTH CLAIM FOR RELIEF

(Negligent Infliction of Emotional Distress)

57. Yam repeats and realleges the allegations set forth in Paragraphs 1-35 of this Complaint as if fully set forth herein.

58. The Defendant owed Yam a duty of care to conduct literally any research and employ threshold level journalistic standards to determine the veracity of the false claims that formed the basis of the Defamatory posts.

59. By failing to conduct any research as to the truthfulness of the false claims, (which did not even include an attempt to contact Yam for comment), and subsequently broadcasting those false claims to millions of people, the Defendant breached its duty to Yam.

60. As a result of the false claims made in the Defamatory Posts and the simultaneous publication of his home address (where he lives with his wife and young children), which prompted anonymous death threats from those who had come across the Defamatory Posts, Yam experienced serious emotional distress that eventually evolved into serious physical distress.

61. The Defendant's negligent publication of the false claims regarding Yam's alleged conduct with respect to Vonleh as well as the publication of Yam's home address is the proximate cause of Yam's serious emotional and physical distress as it caused him to live in constant fear for his own safety and the safety of his family, both of which were reasonable in light of the receipt of death threats from people who now were in possession of his home address.

## FIFTH CLAIM FOR RELIEF

(Public Disclosure of Private Facts)

62. Yam repeats and realleges the allegations set forth in Paragraphs 1-35 of this Complaint as if fully set forth herein.

63. Yam is a private individual and non-public figure who does not engage in public life.

64. Yam takes regular concerted steps to ensure that his private life remains private and out of the public view, which includes exercising extreme caution with respect to who is aware of his home address where he lives with his wife and children.

65. The Defendant negligently and recklessly published Yam's home address to millions of people via the Defamatory Posts while simultaneously falsely accusing him of fraud and forgery.

66. The publication of his home address was not only highly offensive to a reasonable person but it was also extremely alarming, as within hours of the publication of the Defamatory Posts Yam began to receive anonymous death threats. In other words, because of the Defendant's conduct someone was now threatening Yam's life and now had knowledge of where to find Yam should that individual desire to follow through on their threat.

67. Not only was the active character assassination campaign of Yam by Noah Vonelh masquerading as a one-sided "dispute" not newsworthy, there is no justification for the Defendant's decision to post Yam's home address in the context of posts that the Defendant knew or should have known was likely to engender anger directed at Yam in many readers or consumers of their content.

68. As a result of the Defendant's publication of Yam's home address and the context of inciteful posts falsely alleging conduct that may be characterized as criminal and the resulting death threats directed at Yam, suffered and continues to suffer severe emotional, mental, and physical distress and anguish. Yam's distress is only amplified by the universal fact that the internet is "written in ink," as once information is disseminated to millions of people, it never goes away, which means the threat to Yam's wellbeing and the wellbeing of his family still remains.

## PRAYER FOR RELIEF

By reason of the foregoing, Yam is entitled to a money judgment in an amount to be ascertained by the trier of fact, but which is believed will exceed $1,500,000 (one million five hundred thousand USD).

WHEREFORE, it is respectfully requested that this Court enter Judgment in Yam's favor and against the Defendant, Hollywood Unlocked, as follows:

I. With respect to all claims, judgment against Defendant in an amount to be ascertained by the trier of fact but in no event less than $1,500,000.

II. For an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504 in an amount to be

proven or, in the alternative, at Plaintiff's election, an award for statutory damages against each Defendant in an amount up to $150,000.00 for each infringement pursuant to 17 U.S.C. § 504(c), whichever is larger

    III.    An award of punitive damages with respect to all applicable claims.

    IV.    For costs of litigation and reasonable attorney's fees against Defendant.

    V.    For prejudgment interest as permitted by law.

    VI.    For any other relief this Court deems just and proper.

### JURY DEMAND

    VII.    Plaintiff hereby demands a trial of this action by jury.

Dated. November 14, 2025

DANIEL MARCUS, ESQ.

By: _____/s/ Daniel Marcus_____

Daniel Marcus, Esq. (5664164)
Attorney for Plaintiff
82 Nassau St, #62278
New York, NY 12207
Tel. 551-427-5069
Email: dan@hlgesq.com

THE DAS FIRM, APC

By:_____/s/ Dev Das_____
DEV DAS

*Attorneys for Plaintiff Alex Yam*